ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **CELINK**<br><br>Apelado<br><br>v.<br><br>**GRACE MARÍN CANCEL y otros**<br><br>Apelante | KLAN202400964 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Aguadilla**<br><br>Civil Núm.: **AG2023CV01949**<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2025.

Mediante recurso de *Apelación*, comparece ante este Foro, por derecho propio, la señora Grace Marín Cancel (señora Marín Cancel o apelante) y solicita que revisemos la *Sentencia* emitida el 27 de septiembre de 2024, notificada el 3 de octubre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Aguadilla. Mediante esta, el TPI dictó sentencia en contra de la apelante, y ordenó la ejecución de las garantías inmobiliarias, y la venta en pública subasta de los bienes inmuebles hipotecados.

Por los fundamentos que expresamos a continuación, se revoca la *Sentencia* apelada.

**I.**

Según surge del expediente, CELINK incoó una *Demanda* en contra de la señora Marín Cancel, sobre ejecución de hipoteca, ante un presunto incumplimiento con los términos y condiciones pactados en el pagaré hipotecario.[1] En específico, el incumplimiento

---

[1] El 26 de noviembre de 2008, la señora Marín Cancel suscribió y emitió un pagaré hipotecario a favor de The Money House, Inc. o a su orden, por la suma de

con el pago del seguro de la propiedad inmueble en controversia desde el 2019 hasta el 2024.[2]

El 15 de febrero de 2024, la señora Marín Cancel presentó su *Contestación a Demanda porque no est[á] asegurada la propiedad.* En síntesis, alegó que faltaban partes indispensables que no fueron emplazadas, que la Ley Núm. 121 de 1 de agosto de 2019, conocida como la *Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores.* Además, negó el incumplimiento que CELINK le estaba imputando, y solicitó la desestimación de la demanda.

Así las cosas, el 5 de febrero de 2024, el TPI emitió una *Orden de Referido al Centro de Mediación de Conflictos en casos de Ejecución de Hipotecas para atenderse mediante videoconferencia.* Dispuso que según el proceso de mediación compulsoria que exige la Ley Núm. 184 de 17 de agosto de 2012, según enmendada, conocida como la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal* y el Reglamento de Métodos Alternos para la Solución de Conflictos, se llevaría a cabo mediante videoconferencia el 27 de febrero de 2024. De igual manera, el 23 de febrero de 2024, notificada el 26 de febrero de 2024, el foro primario emitió una *Orden sobre manejo del caso.* Ordenó que las partes coordinaran una reunión para cumplimentar el Informe para el Manejo del Caso, y señaló una conferencia inicial a celebrarse mediante videoconferencia.

En desacuerdo con la *Orden* del TPI, la señora Marín Cancel presentó una *Moción de Oposición.* Informo que carecía de una computadora, por lo que se oponía a la celebración de la vista.

---

$300,000.00 de principal, a razón de 3.21% anual de interés. Para garantizar el pago del Pagaré, constituyó una Hipoteca mediante la Escritura número 576 ante el notario Ana V. Piñero Pares.

[2] De la *Demanda* original surge que los años reclamados lo son: 2019-2020, 2020-2021 y 2023-2024.

Tomando en consideración lo anterior, el foro primario emitió una *Orden sobre manejo del caso enmendada,* a los únicos efectos de hacer constar que la vista señalada para el 9 de mayo de 2024 a las 9:00 a.m. sería de manera presencial en el Centro Judicial de Aguadilla.

Posteriormente, el 8 de abril de 2024, el Centro de Mediación de Conflictos (CMC) presentó ante el foro primario un documento intitulado *Moción Informativa sobre resultado de caso de Ejecución de Hipoteca atendido mediante servicio de videoconferencia.* El CMC informó que "en vista de las ausencias de la parte demandada damos por concluida nuestra intervención para dar paso al trámite judicial que corresponda".[3]

El 17 de mayo de 2024, CELINK presentó una *Moción de Sentencia Sumaria,* en la cual expuso que no existían hechos materiales en controversia, por lo que, basado en la declaración jurada del oficial de CELINK a cargo de la cuenta y de los documentos adjuntados, procedía dictar sentencia sumariamente contra la señora Marín Cancel.[4] Señaló que la hipoteca y la propiedad constaban inscritas en el Registro de la Propiedad, Sección de Aguadilla, y que CELINK era la entidad con derecho a exigir el cumplimiento del instrumento. Enfatizó que el pagaré disponía que el acreedor hipotecario podía requerir el pago total inmediato de todo el principal adeudado e interés acumulado si no se realizaba una obligación del deudor bajo la hipoteca. Alegó que incurrieron en gastos por concepto de seguros sobre la propiedad

---

[3] Surge de la moción presentada por el CMC que la primera cita por videoconferencia se llevó a cabo el 27 de febrero de 2024, a la cual la señora Marín Cancel no se conectó. Además, que al revisar el SUMAC, advinieron en conocimiento de la moción presentada por la Marín Cancel para informar la situación con la computadora. Por lo anterior, se citó el caso nuevamente para el 26 de marzo de 2024, a la cual la señora Marín Cancel tampoco acudió, sin excusarse. Se citó el caso para el 5 de abril de 2024, de manera presencial. Sin embargo, a esa tampoco acudió.

[4] Junto a su *Moción de Sentencia Sumaria,* CELINK incluyó los siguientes anejos: (1) Primer Pagaré con tasa de interés ajustable; (2) Registro de la Propiedad en Aguadilla; (3) Certificación Registral; (4) Declaración Jurada acreditando deuda del Sr. Caryn Edwards, agente autorizado de CELINK.

para los periodos del 2019-2020, 2020-2021, y 2023-2024 ascendentes a una suma de $2,422.59.

Establecido lo anterior, solicitó el pago de la suma principal $239,496.55, más los intereses ascendientes a $67,038.83 al 26 de diciembre de 2023, los cuales continúan acumulándose en un 3.21%, así como costas y honorarios de abogados equivalentes a $30,000.00. Asimismo, solicitó la ejecución y venta en pública subasta del bien inmueble y la cancelación de todos los créditos o cargos conforme a la Ley Hipotecaria. La señora Marín Cancel no se opuso al petitorio sumario presentado por CELINK.[5]

Luego de evaluar la evidencia presentada por CELINK, así como el expediente ante su consideración, el TPI emitió la *Sentencia* que hoy revisamos. El foro primario formuló las siguientes determinaciones de hechos:

1. El 26 de noviembre de 2008, Grace Marín Cancel t/c/c Grace Marín De Guzmán suscribió y emitió un pagaré hipotecario a favor de The Money House, Inc., o a su orden, por la suma de $300,000.00 de principal, más intereses a razón de 3.21% [de interés anual] sobre el balance adeudado.

2. Para garantizar el pago de dicho Pagaré, se constituyó hipoteca voluntaria mediante la Escritura número 576 el día 26 de noviembre de 2008, ante el Notario Ana V. Piñero Pares.

3. La escritura de hipoteca grava el bien inmueble que se describe a continuación:
   a. RUSTICA: Finca compuesta de 1.00 cuerda o sea 29 áreas, 30 centiáreas y 40 miliáreas, radicada en el Barrio Guerrero de Isabela, Puerto Rico. En lindes por el Norte, con Ladislao Mirla; por el Sur con Bernabé Cordero Tosado; por el Este, con carretera Insular número 2; y por el Oeste, el resto de la finca de la cual se segrega, o sea de Don Hilario González Martínez. Enclava una casa.

4. La hipoteca consta inscrita al folio 12 vuelto del tomo 488 de Isabela, Registro de la Propiedad de Puerto Rico, Sección de Aguadilla, finca 4,497, inscripción 12ma.

---

[5] De los anejos en el recurso presentado, surge que el 8 de mayo de 2024, la señora Marín Cancel presentó una *Moción de Sentencia Sumaria.* Sin embargo, del Sistema Unificado de Manejo y Administración de Casos no surge que la solicitud fuera presentada en el TPI como parte del caso ante nuestra consideración.

5. La propiedad consta inscrita al folio 142 del tomo 77 de Isabela, Registro de la Propiedad de Puerto Rico, Sección de Aguadilla, finca 4,497. La parte demandante es la persona con derecho a exigir el cumplimiento del instrumento.

6. El inciso 7 del Pagaré dispone que "el Acreedor Hipotecario puede requerir el pago total inmediato de todo el principal adeudado e interés acumulado si: (B)(iii) No se realiza una obligación del Deudor bajo la Hipoteca [...]".

7. El sub inciso 9 (b)(iii) de la Escritura de la Hipoteca, dispone que el acreedor puede requerir el pago inmediato de las sumas adeudadas aseguradas por la hipoteca si el deudor no realiza una obligación bajo la Hipoteca.

8. La parte demandada ha incurrido en incumplimiento conforme los términos y condiciones de la Hipoteca al haber dejado de mantener la propiedad asegurada. La parte demandante ha incurrido en gastos por concepto de seguro sobre la propiedad para los periodos 2019-2020, 2020-2021, y 2023-2024 ascendentes a la suma de $2,422.59, más cualquier otro adelanto que resulte necesario ante incumplimientos adicionales o futuros de la demandad para con su obligación.

9. La parte demandada además incumplió con el pago de contribuciones sobre la propiedad.

10. La parte demandada adeuda la suma principal de $239,496.55, más los intereses sobre dicha suma en la cantidad de $67,038.83 al 26 de diciembre de 2023, los cuales continuarán acumulándose al 3.21% hasta su completo pago, más la suma equivalente a $30,000.00 para gastos, costas y honorarios de abogado según pactados por cantidad razonable según su valor en el mercado.

11. El préstamo está garantizado mediante el Pagaré, por lo que la parte demandante ha declarado la totalidad de la deuda vencida, más los intereses que se acumulen hasta el pago total de la deuda, más los honorarios de abogados pactados, más costas y gastos de este proceso.

12. Dicha deuda esta vencida, es líquida y exigible.

13. La parte demandada no es menor de edad, ni incapacitada, ni se encuentra prestando servicios militares en el ejército de los Estados Unidos de América, ni de ningún país aliado conocido.

El TPI concluyó que la señora Marín Cancel adeuda la suma de $239,496.55, más los intereses sobre dicha suma en la cantidad de $67,038.83, los cuales continuaran acumulándose al 3.21% hasta su pago completo. Además, otorgó la suma de $30,000.00 a favor de CELINK en concepto de los gastos, costas y honorarios de abogado, según pactados. Finalmente, ordenó la ejecución de las garantías inmobiliarias y por consiguiente la venta en pública subasta de los bienes inmuebles hipotecados para aplicar el importe de la venta al saldo de la deuda para con CELINK.

Inconforme, la señora Marín Cancel acudió nuevamente ante este Tribunal y solicita la revisión del referido dictamen. Le imputó al TPI la comisión de los siguientes errores:

> En este caso no hay jurisdicción, porque hay un res ipsa loquitur, la cosa habla por sí sola al someter un pagaré en blanco sin el endoso específico que requiere la ley y el Tribunal se negó a desestimar con perjuicio como manda la ley de transacciones comerciales.
>
> Cometió grave error constitucional cuando se le somete en nuestra contestación la prueba documental de que el Seguro de la casa estaba al día y resuelve que no, contrario a la prueba.
>
> Comete grave error porque las contribuciones según el derecho Civil nuestro que requieren pagos parciales, prescriben cada 5 años. La cesión prescribe al año.
>
> Comete grave error procesal constitucional, cuando somete una moción sumaria y no nos la notifica. Un acto de despojo.
>
> Comete grave error constitucional procesal cuando acudimos al Tribunal para que le ordene nos notifique dicha moción y el Tribunal nada hace y luego dice que no nos opusimos a la misma, cuando fuimos hasta el Tribunal de Apelaciones, y tuvimos enfermedad familiar; sometimos otra.
>
> Viola los principios generales de derecho, que están por encima de la Constitución misma, que "nadie puede salirse de un contrato a fuerza de su decisión unilateral".
>
> Viola la ley local, que tenia que traer una parte indispensable contra dos personas de edad avanzada, como el Departamento de la Familia.

> Es totalmente ilegal en una sentencia sumaria condenar a una persona al pago de TREINTA MIL DÓLARES de honorarios de abogado. Lo legal es que se someta un memorando de costas y se especifique las horas trabajadas.

El 27 de noviembre de 2024, CELINK compareció mediante *Alegato de la Apelada*. Con el anterior cuadro fáctico, procedemos a resolver con el beneficio de la comparecencia de ambas partes.

## II.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[6] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA

---

[6] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin

embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión,* supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar

denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, pág. 119.

**III.**

En su recurso de *Apelación*, la señora Marín Cancel aduce que el Código Civil dispone que la Ley de Transacciones Comerciales establece que un pagaré debe ser endosado específicamente, y que en el caso ante nuestra consideración el pagaré no fue endosado. Enfatiza que presentó evidencia del seguro de la propiedad inmueble actualizada, y que el Tribunal omitió información provista, resolviendo así en violación al debido proceso de ley. De igual manera, alega que la sentencia sumaria presentada por CELINK no le fue notificada, y que por tal razón no presentó su oposición. Finalmente, aduce que no procede la imposición de $30,000.00 en concepto de honorarios de abogado, toda vez que no existen horas trabajadas considerables.

Por su parte, CELINK arguye que el pagaré objeto de controversia contiene una cadena de endosos desde su acreedor original hasta que Reverse Mortgage Funding LLC lo endosó en blanco. Argumenta que lo anterior basta para cumplir con las disposiciones de la Ley de Transacciones Comerciales y además, que

le concede legitimación activa a CELINK para iniciar la acción de cobro. Por otro lado, señala que la señora Marín Cancel acompañó junto a sus escritos una copia de una póliza de seguros con efectividad desde el 10 de marzo de 2024 hasta el 10 de marzo de 2025. Sin embargo, que el incumplimiento con el pago de los seguros reclamado en la demanda se retrotrae a los periodos del 2019-2020, 2020-2021 y 2023-2024. De igual manera, expuso que la señora Marín Cancel no ha producido evidencia del seguro de la propiedad para todos los periodos, justificación alguna para no pagar los impuestos y tampoco ha facilitado la comunicación entre las partes para un proceso de negociación. Finalmente, exhorta que se confirme la *Sentencia* apelada, toda vez que el TPI concedió amplia oportunidad a la señora Marín Cancel para mediar conforme a la Ley 184-2012, *supra*, así como a defenderse de las alegaciones en su contra y ésta nada hizo. Veamos.

En el transcurso del proceso en el foro de instancia, CELINK presentó una solicitud de sentencia sumaria, alegando, en síntesis que son la entidad con derecho a exigir el cumplimiento del instrumento en controversia. Añadió que el pagaré dispone que el acreedor hipotecario puede requerir el pago total inmediato de todo el principal adeudado e interés acumulado si no se realiza una obligación del deudor bajo la hipoteca. Por su parte, la señora Marín Cancel no presentó una oportuna oposición, por lo que el TPI, luego de evaluar la solicitud, determinó que correspondía el pago de lo adeudado y ordenó la venta en pública subasta de la propiedad inmueble en controversia.

Luego de evaluado el expediente y el SUMAC, notamos que el 5 de febrero de 2024, el TPI ordenó a las partes al procedimiento de mediación para el 27 de febrero de 2024.[7] Luego, el 21 de febrero de

---

[7] Véase, la entrada Núm. 12 del expediente digital del Caso Núm. AG2023CV01949 en el SUMAC.

2024, la señora Marín Cancel presentó un documento intitulado *Moción en Oposición*, en el que fundamentó su oposición a la orden del Tribunal, toda vez que no contaba con una computadora para poder acceder a la videoconferencia. A tales efectos, el TPI emitió una *Orden* el 26 de febrero de 2024, y dispuso "**Nada que proveer.**", en relación a la moción presentada por la señora Marín Cancel. El 8 de abril de 2024, el Centro de Mediación de Conflictos presentó una *Moción Informativa Sobre Resultado de Caso de Ejecución de Hipoteca atendido mediante Servicio de Videoconferencia* en el cual informaron lo ocurrido en el proceso de mediación de conflictos entre las partes. Como parte de la moción, el CMC desglosó los eventos ocurridos como parte del proceso de citación para la mediación. En específico, informaron que:

1. Las partes de epígrafe fueron referidas por este Honorable Tribunal al Centro de Mediación de Conflictos (en adelante, el CMC) de la Región Judicial de Aguadilla mediante Orden del 5 de febrero de 2024. Esta fue notificada el 9 de febrero de 2024.
2. Que a la primera cita por videoconferencia del 27 de febrero de 2024 se conectó el representante de la parte demandante el Lic. Francisco J. Cardona Pérez. La parte demandada Grace Marín Cancel no se conectó, al revisar SUMAC está alegó "oponerse a la vista del 28 de febrero de 2024 por internet por carecer de computadora alguna". Se aceptó el caso para mediación. Se cita nuevamente para el 26 de marzo de 2024 de manera presencial.
3. Que el 26 de marzo de 2024 se conecta a la **videoconferencia** el representante de la parte demandante el Lic. Francisco J. Cardona Pérez y la parte demanda no compareció ni se excusó. Se cita el nuevamente para el 26 de marzo de 2024 de manera presencial.
4. Que el 5 de abril de 2024 comparece de manera **presencial** el representante de la parte demandante el Lic. Francisco J. Cardona Pérez y la parte demandada no compareció ni se excusó.
5. Vale destacar que hubo dos ausencias de la parte demandada. El Artículo 3 de la Ley Núm. 184-2012, supra, habla sobre el efecto de la ausencia de la parte demandada al proceso de mediación: "De no presentarse el deudor al procedimiento de mediación en cualquiera de sus etapas, sin que medie justificación adecuada; de no entregar al acreedor los documentos solicitados en un tiempo razonable, según lo dispuesto en este Artículo, o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de medición, dicho

> acreedor actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca...".
> 6. En vista de las ausencias de la parte demandada damos por concluida nuestra intervención para dar paso al trámite judicial que corresponda.

Incluso, el TPI en su *Sentencia*, acogió lo informado por el CMC y lo incluyó como sigue:

> Las partes fueron referidas al proceso de mediación compulsoria conforme a la Ley 184 de 2012 y sus enmiendas, sin embargo, la deudora y aquí demandada no compareció por lo cual el centro de mediación y conflictos devolvió el caso ante nuestra consideración.

Sin embargo, del expediente no surge de qué manera las citaciones fueron notificadas y/o entregadas a la señora Marín Cancel. Enfatizamos que el Tribunal, sin más, dispuso "Nada que proveer.", a la solicitud de la señora Marín Cancel, aun cuando informó su dificultad para conectarse a la videoconferencia, al no tener una computadora.

El Artículo 3 de la Ley 184-2012, *supra*, dispone que "de no presentarse el deudor hipotecario al procedimiento de mediación en cualquiera de sus etapas, **sin que medie justificación adecuada** o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, se presumirá que voluntariamente el deudor hipotecario ha desistido del proceso de mediación compulsoria y dicho acreedor hipotecario procederá con la continuación del proceso de ejecución hipotecaria según corresponda". Resulta evidente que el expediente judicial carece de documento que acredite la citación de la señora Marín Cancel para el proceso de mediación de manera correcta y si medió justificación adecuada para ello. Del expediente no se desprende que el foro de instancia evaluó si las razones de la señora Marín Cancel constituyen justa causa para su incomparecencia. Añádase a lo anterior, que no aparece notificación alguna en el expediente más allá de la señora Marín Cancel alegar que fue notificada y su

inhabilidad de conectarse a la videoconferencia por no tener una computadora y solicitar que se llevara a cabo de manera presencial.

Por otro lado, los hechos de este caso versan sobre el incumplimiento con las cláusulas de un pagaré hipotecario suscrito por la señora Marín Cancel sobre la propiedad inmueble en controversia ubicada en Isabela, Puerto Rico. Según surge de la declaración jurada del señor Caryn Edwards, firmante autorizado de CELINK, la hipoteca objeto de controversia se encuentra inscrita en el Registro de la Propiedad, y CELINK es quien está en posesión del pagaré original. **Además, informó que le fue enviada una notificación a la señora Marín Cancel de que la deuda estaba vencida y pagadera.**[8] Por lo tanto, al ser CELINK el tenedor del pagaré hipotecario en controversia, ostentaban el título del mismo, por lo que tenían derecho a reclamar el cobro de lo adeudado, conforme lo establecido en las respectivas cláusulas y condiciones. Sin embargo, del expediente no surge la carta de cobro que alegadamente le fue enviada a la señora Marín Cancel a los efectos de informarle sobre su incumplimiento. Tampoco surge de la *Demanda* o de la *Moción de Sentencia Sumaria*, la documentación necesaria para poder acelerar el cobro de una deuda de un pagaré hipotecario. Es decir, la aprobación del Secretario del Departamento de Vivienda y Desarrollo Urbano (HUD, por sus siglas en inglés), no fue incluida como evidencia documental sustancial requerida para disponer del caso por la vía sumaria, de ser necesario.[9] Por lo tanto,

---

[8] Para efectos del procedimiento para acelerar una deuda de un pagaré hipotecario por incumplimiento con las disposiciones de las obligaciones del deudor con el acreedor, véase KLCE202400899.

[9] Véase, *Finance of America Reverse, LLC v. Carmona–Vargas*, 288 F. Supp. 3d 500, 503 (2018) que establece lo siguiente en relación al procedimiento para acelerar el cobro de una deuda de un pagaré hipotecario:

> **"Plaintiff was required (1) to seek and obtain authorization from HUD to accelerate the loan obligation, and (2) to notify HUD and Defendants with at least thirty days of anticipation and give them and opportunity to cure the breach."**

ante el incumplimiento con lo anterior, y al no existir evidencia en el expediente, CELINK no demostró tener el derecho de acelerar la deuda por incumplimiento con el pago de las pólizas de seguro de los años solicitados. Ello, toda vez que el mismo pagaré, en la sección 7(B), dispone que:

> El acreedor hipotecario puede requerir el pago total inmediato de todo el principal adeudado e interés acumulado, **con la aprobación por parte de un representante autorizado del Secretario**, si:
>
> [...]
>
> (iii) No se realiza una obligación del Deudor bajo la Hipoteca.

(Énfasis nuestro).

Resulta evidente que previo a comenzar una acción legal en contra de los deudores, el acreedor tiene que poseer evidencia demostrativa de que el HUD autorizó declarar la obligación liquida y exigible. Así pues, tras un ponderado examen del expediente, somos del criterio que el foro primario erró al dictar *Sentencia* en contra de la señora Marín Cancel, sin validar y/o cotejar la documentación necesaria requerida para acelerar el cobro de la deuda, según lo establece el Pagaré. De igual manera, erró el TPI al no celebrar una vista entre las partes para que la señora Marín Cancel se expresara respecto a sus incomparecencias en el proceso de mediación, tomando en consideración las citaciones y las circunstancias personales de esta.

Así las cosas, devolvemos el caso al foro primario para que celebre una vista y se le brinde la oportunidad a la señora Marín Cancel de explicar y fundamentar sus ausencias al proceso de mediación, y de esa manera determinar si medió justificación adecuada, según lo dispone el Artículo 3 de la Ley 184-2012, supra,

---

**"Plaintiff must also submit evidence showing that HUD gave its authorization to declare the obligation due and payable prior to commencing this action."**

para proceder con el proceso judicial. Asimismo, ante la inobservancia contractual por parte de CELINK de proveer la tenencia de la autorización del HUD para adelantar el cobro de la hipoteca revertida, la acción que se llevó a cabo judicialmente no se realizó conforme a derecho, convirtiendo la sentencia emitida nula.

**IV.**

Por los consideraciones que anteceden, se revoca la *Sentencia* pronunciada el 27 de septiembre de 2024 por el foro de instancia y se devuelve el caso para la continuación de los procedimientos conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones